IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| K. KIM FARMER, | : | CIVIL ACTION |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | No: 16-6211 |
| AMERICAN HOME MEDICAL | : | |
| EQUIPMENT AND SERVICES, INC., | : | |
| d/b/a AMERICAN HOME MEDICAL, | : | |
| | : | |
| **Defendant.** | : | |

**M E M O R A N D U M**

**STENGEL, C.J.**                                                                                  February 14, 2018

      This case involves the alleged discriminatory conduct by American Home Medical Equipment and Services, Inc. ("AHM"). Plaintiff, a pro se litigant, alleges that she was prevented from purchasing a TENS unit[1] because of her race in violation of 42 U.S.C. § 1981 and § 1983. Defendant moves to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. No. 24.) Plaintiff opposes the motion. (Doc. No. 27.)

    **I.**     **Background**

      On July 10, 2015, plaintiff went to AHM located on Hamilton Boulevard in Allentown, Pennsylvania to purchase a TENS unit that was prescribed by her physician.

---

[1] A TENS unit is a Transcutaneous Electrical nerve Stimulation unit which sends stimulating pulses across the surface of the skin and along the individual's nerve strands to help prevent pain signals from reaching the brain. (Doc. No. 24 at 2 n. 1.)

1

(Am. Compl. at 2.) Plaintiff provided the following description of events in her Amended Complaint:

> Prior to coming [to AHM], I called and asked questions in regards to obtaining equipment. They appeared to be nice to me on the phone and said to bring insurance information and they would contact the insurance company and if my insurance will pay, then they would give me the equipment that day.
>
> I walked into AHM [at] approximately 4 p.m. that Friday, July 10, 2015. I immediately became uncomfortable with the front desk lady who gave me an application to fill out. I presented my insurance information and the name of the adjustor to contact for my car insurance. The desk lady asked me if I had health insurance and I said I did but was only able to use my car insurance since this was related to the accident. I told her that I had Medicare and with that she insulted me by saying "Do you mean Medicaid?" I repeated again, "No, I have Medicare due to me having a health matter." She then insulted me again and said "I didn't think you were that old."
>
> The lady then went to the back with my application saying she didn't know how to process car accident insurances [sic] and I was more suspicious how long she was taking. She finally came back and said I could get the equipment if I showed my license and that she also spoke to the insurance company. I told her I didn't have my license and had to look for it. I went to my car and found it and came back in. I had wrapped my credit cards and license with a piece of tape around it and it happen [sic] to have a tiny piece over the color of eye [sic]. She questioned me about this and I told her it must have stuck [sic] on it. The license was fine, my name, address and license number was [sic] clearly visible and intact which is the most important part, not what my body feature is.
>
> I was upset from the Medicaid incident and now this. After she made a copy of the license she said she could not give me my equipment because they needed my medical records. I told her [those were] private records and they are not getting my records for no reason and my insurance did not require them. The desk lady said she would not be able to provide the equipment until then.
>
> I left and contacted my car insurance and asked why I couldn't get my equipment. While on the phone I walked back to [the] American Home Medical building and asked for the supervisor. I still had the car insurance person on the phone for some time. So it [] probably recorded some of the supervisor's words to me by the car insurance company recording of my phone conversation.

I asked the supervisor why I wasn't allowed my medical equipment and that's when she told me they were suspicious of me because originally I said I didn't have my license and then I went out and got it. She said my license was altered, she said that the prescription may not be written from a doctor. She also said that she's not sure if she will get payed [sic] by my insurer even after verifying it. She said "How do I know you really need this equipment and that it's medically necessary." She said I refused to give my Medicare numbers (I feel they thought I lied, and I have Medicaid.) She also said I didn't give my SS# which I told her I did give them the last 4 digits. I also said to the supervisor "Could I get it then if you originally said I could have it if I gave you my Medicare numbers." She then changed her story to "no because we need your medical records from your doctor to show why you need this equipment and if it's medically necessary." Also she stated we need to make sure we will get paid and have to wait. I told her I would get my lawyer to fax a letter at that moment guaranteeing payment. The manager refused that also and said, "that doesn't mean anything, it could take 2 years for us to get paid." Then she changed it again to we need proof that you really need this equipment. She also used the word that she was suspicious of fraud since I didn't want to provide my social security number, which I did.

She spoke to my car insurance adjustor, so I am determining that my treatment was unjust, discriminatory towards my race, black and my disability. The manager knew I believe [sic] that I couldn't afford to pay cash for the equipment and that is why I believe she stated that if I wanted it, I could buy it for myself.

That weekend I was in so much pain and took extra pain medicine.

On Monday I contacted my insurance again and was informed that they never had a problem like they did with American Home Medical. Not only did they verify I had insurance and they would pay for my equipment, but my car insurance also said it was unusual that they wanted them to also fax a letter stating the same approval that was given verbally.

I saw people that were Caucasian give their insurance and get their items at the supply company, without being asked to provide all the information I had to, and without being asked for their medical records. I was also upset that the manager accused me of fraud while other customers were present. I told the manager that other places would give me my medical equipment without my records and she said for me to go there. She took my papers (application also) and said she was going to walk over to the shredder and I should leave before the other places close for the weekend. I then left. Obviously, it was too late to see if any other place could help me because it was now close to 5 p.m. and the other places would be closed for the weekend.

(Am. Compl. at 2-4.)

## II. Procedural History

Plaintiff filed an initial complaint on December 15, 2016. (Doc. No. 4.) On March 8, 2017, Defendant filed a motion to dismiss for failure to state a claim. (Doc. 8.) After plaintiff missed the initial deadline to respond to defendant's motion to dismiss, I entered an order directing plaintiff to file a response by April 28, 2017. (Doc. No. 12.) On April 19, 2017, plaintiff moved for an extension of time to respond. (Doc. No. 13.) I granted plaintiff's motion, extending the time to respond until May 28, 2017. (Doc. No. 14.) The Order noted, "[n]o further extensions will be granted." (Id.) On May 24, 2017, plaintiff moved for a second extension of time (Doc. No. 15), which defendant opposed. (Doc. No. 16.) On May 30, 2017, I issued an order denying plaintiff's second request for an extension of time, and granting defendant's motion to dismiss without prejudice. (Doc. No. 18.) Plaintiff was permitted twenty days to file an amended complaint. On June 6, 2017, plaintiff filed an amended complaint. (Doc. No. 23.) Defendant filed a motion to dismiss for failure to state a claim on June 15, 2017 (Doc. No. 24), and plaintiff opposed the motion. (Doc. No. 27.)

## III. Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). To sustain this challenge, the factual allegations in the complaint must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Conclusory allegations are

4

insufficient to support a facially plausible claim; the facts asserted must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. Twombly, 550 U.S. at 555; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984). The court asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Twombly, 550 U.S. at 563 n. 8 (2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

When presented with a motion to dismiss for failure to state a claim, district courts conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The court must accept all of the complaint's well-pleaded facts as true but may disregard legal conclusions. Iqbal, 556 U.S. at 679. Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. In other words, a complaint must do more than allege entitlement to relief. A complaint has to "show" such an entitlement with its facts. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679; see also Phillips, 515 F.3d at 232-34 (holding that: (1) factual allegations of a complaint must provide notice to the defendant; (2) the complaint must allege facts indicative of the proscribed conduct; and

5

(3) the complaint's "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting Twombly, 550 U.S. at 555) (alterations in original).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading need not contain detailed factual allegations, but must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Twombly, 550 U.S. at 545. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. at 557.

IV. Discussion

Plaintiff alleges that AHM discriminated against her based on race in violation of 42 U.S.C. § 1981 and § 1982.[2] I will address each in turn.

A. **Plaintiff fails to state a claim under 42 U.S.C. § 1981.**

Section 1981 prohibits discrimination in the "making and enforcement of contracts on the basis of race." Singh v. Wal-Mart Stores, Inc., No. 98-1613, 1999 WL 374184, at *4 (E.D.Pa. Jun. 10, 1999). Although 1981 claims typically arise in the context of employment contracts, claims involving retail transactions are also actionable. Id. at *5. To state a claim for relief under Section 1981, a plaintiff must demonstrate that

---

[2] AHM read plaintiff's complaint liberally to include a claim under 42 U.S.C. § 2000a which prohibits discrimination in a place of public accommodation based on race, color, religion, or national origin. Plaintiff concedes that she did not bring a claim under 42 U.S.C. § 2000a. (See Doc. No. 27 at ¶¶ 7, 8.) Therefore, I need not reach the merits of this claim. Even if I were to reach the merits, AHM's business is not one of the establishments delineated in § 2000a(b) as constituting a place of public accommodation. Therefore, plaintiff cannot sustain a claim under 42 U.S.C. § 2000a. See McCrea v. Saks, Inc., No, 00-1936, 2000 WL 1912726, at *5 (E.D.Pa. Dec. 22, 2000) ("[E]stablishments not listed in Section 2000a(b)(2) should not be read into that provision.")

"(1) she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e. the making and enforcing a contract)." McCrea, 2000 WL 1912726, at *3.

Plaintiff is African American which satisfies the first prong of the plaintiff's prima facie case. Ackaa v. Tommy Hilfiger Co., No. 96-8262, 1998 WL 136522, at *3 (E.D.Pa. Mar. 24, 1998) ("Since plaintiffs are of African origin, there is no dispute in this action that they can prove that they are members of a racial/ethnic minority, the first element of the prima facie case."); see also, Ackerman v. Food-4-Less, No. 98-1011, 1998 WL 316084, at *2 (E.D.Pa. Jun. 10, 2008).

With respect to the second element, plaintiff must plead facts sufficient to demonstrate that AHM's actions were "racially motivated and intentionally discriminatory." Ackaa, 1998 WL 136522, at *3. Plaintiff's amended complaint does not set forth any facts tending to demonstrate that AHM's actions were based on plaintiff's race. The complaint alleges that plaintiff spoke with an AHM employee on the phone who advised plaintiff that if the equipment was covered by insurance, plaintiff would receive the TENS unit that same day. Plaintiff arrived at AHM and they attempted to confirm payment of the equipment. Specifically, an AHM employee requested plaintiff's insurance information and informed her that they were unable to process her application without her license and a copy of her medical records. Plaintiff declined to provide her medical records. A supervisor then informed plaintiff that they were "suspicious" of her, noting that her license was altered and the prescription may not have been written by a

doctor. (Id. at 3.) The supervisor stated, "we need to make sure we will get paid" and advised plaintiff that she could pay for the equipment in cash. (Id.)

Nothing in the complaint demonstrates that AHM's actions were racially motivated or intentionally discriminatory. There were no references to plaintiff's race or any evidence to support the inference that AHM's actions were the result of racially biased conduct. Cf. Ackerman, 1998 WL 316084, at *2 (Plaintiff sufficiently pled the second element where the complaint alleged that numerous racial slurs were lodged against her and plaintiff was told that she "should could not be married to her husband because he was white and she was a minority."). Not only does the complaint fail to demonstrate racial motivations, it affirmatively demonstrates a race-neutral basis for AHM's actions: financial gains. AHM is in the business of selling medical devices and cannot be held liable under § 1981 for operating the business with an eye towards profits. Construing the amended complaint liberally and drawing all inferences in plaintiff's favor, I find that plaintiff failed to plead facts demonstrating that AHM's actions were based on plaintiff's race.

The third element requires a showing that the "discrimination concerned one or more of the activities enumerated in the statute." McCrea, 2000 WL 1912726, at *3. The court in Ackaa, supra, explained,

> In the context of a contract discrimination claim arising from a retail transaction, the courts have universally required that in order to successfully establish the third element of a prima facie case . . . plaintiffs must produce evidence of something more than the same type of racially based, discriminatory conduct sufficient to support the second element of a § 1981 prima facie case.

1998 WL 136522, at *5. The plaintiff must allege that she was "actually prevented, not merely deterred, from making a purchase or receiving a service after attempting to do so." Id. (citing Henderson v. Jewel Food Stores, Inc., No. 96-3666, 1996 WL 617165 (N.D. Ill. Oct. 23, 1996)).

Plaintiff failed to set forth sufficient facts demonstrating that she was denied the "enjoyment of all rights, privileges, [and] terms and conditions" of the contractual relationship with AHM. Ackaa, 1998 WL 136522, at *6. AHM did not actually prevent plaintiff from purchasing the equipment. In fact, the supervisor advised plaintiff that she could purchase the TENS unit with cash. At worst, plaintiff was deterred from making the purchase, which is insufficient to sustain a claim under § 1981. Cf. Henderson, 1996 WL 617165 (denying summary judgment where plaintiff was detained and ultimately ejected from the store on the way to the cash register, which was sufficient to demonstrate that plaintiff was prevented from making a purchase.)[3]

I find that plaintiff failed to set forth sufficient facts to demonstrate a claim under § 1981, and defendant's motion to dismiss is granted.

**B. Plaintiff fails to state a claim under 42 U.S.C. § 1982.**

Plaintiff also alleges AHM discriminated against her based on race in violation of § 1982. (Sec. Am. Compl.)

---

[3] Plaintiff alleges that she "saw people that were Caucasian give their insurance and get their items at the supply company, without being asked to provide all the information I had to, and without being asked for their medical records." (Sec. Am. Compl. at 3.) This conclusory allegation is insufficient to demonstrate preferential treatment of another customer who was similarly situated in "all relevant respects." Singh, 1999 WL 374184, at *7.

"Section 1982 prohibits racial discrimination in transactions relating to real and personal property by securing the right of all citizens to 'inherit, purchase, lease, sell, hold, and convey real and personal property.'" Rose v. Rothrock, No. 08-3884, 2009 WL 1175614, at *5 (E.D.Pa. Apr. 29, 2009) (citing 42 U.S.C. § 1982). To state a claim under 42 U.S.C. § 1982, a plaintiff must allege "1) the defendant's racial animus; 2) intentional discrimination; and 3) that the defendant deprived plaintiff of [her] rights because of race." Id. (citing Brown v. Phillip Morris Inc., 250 F. 3d 789, 797 (3d Cir. 2001)) (internal citations omitted). "These elements are 'virtually identical' to those of § 1981." Id. (citing Soo San Choi v. D'Appolonia, 252 F.R.D. 266, 272 (W.D.Pa. 2008)).

Plaintiff's §1982 claim fails for the same reasons discussed above. Plaintiff is unable to demonstrate that AHM acted with intentional discrimination or that plaintiff was deprived of her rights because of race. I find that Plaintiff failed to set forth facts sufficient to demonstrate a claim under § 1982 and defendant's motion to dismiss is granted.[4]

---

[4] Plaintiff also alleges that she was discriminated against based on her disability. Title III of the ADA prohibits discrimination based on a person's disability in places of public accommodation. Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 542 (W.D.Pa. 2013); 42 U.S.C. § 12182(a). The plaintiff's complaint fails to identify her disability, and fails to set forth any facts demonstrating plaintiff's right to recovery under Title III of the ADA. Plaintiff's opposition papers also fail to address this claim. What is more, a claim under Title III of the ADA permits only prospective injunctive relief and plaintiff, here, seeks only monetary damages. Anderson, 943 F. Supp. 2d at 538. For these reasons, the amended complaint fails to state a claim under Title III of the ADA.

## V.     Conclusion

I find that plaintiff's amended complaint fails to state a claim on which relief can be granted. Defendant's motion to dismiss pursuant to Rule 12(b)(6) is granted with prejudice and the amended complaint is dismissed.

An appropriate Order follows.